at all, or arguments not to exceed 15 minutes per side. Mr. John J. Bursch for the appellants. Morning. Morning, Your Honors. John Bursch on behalf of Mr. Winget and the Winget Living Trust. Do you mind starting with a finality? Finality, as in this case has been going on   for a long time, but the central issue in this case. I mean it in many ways, don't I? Let's talk about more specifically whether we have jurisdiction here. It's a very serious issue for all three of us. Sure. As we explained in our October 1st letter, and Chase does as well, it's well recognized even in this circuit that when you have a judgment that resolves all issues related to... Even in this circuit. What's this, even in this circuit? I'm sorry. I didn't mean to be cavalier about that. Specifically, the Joseph Hughes case that we cite in that letter. That when you have a final order with respect to assets in a collection effort, you have a final order that this court has full jurisdiction to hear. Would every collection order be appealable? Potentially, yes. That doesn't happen very often, but... Well, it might happen more often than you think, but why then if every order is appealable, the converse is also true. If you don't appeal it, you waive, right? Right. Potentially, in a large action where there's... If you sought to collect and get a car, for example, and a collection order was granted, that would be appealable? Yes, absolutely. Every bank account, every car, every house, every building, every order? I think that is the lesson of the Joseph Hughes case. That involved a motion to vacate a garnishment. What's the lesson of... Let him finish the point. Go ahead. Just say that one. I want to hear it. A motion to vacate a garnishment, and this could have been a mortgage, there could have been a car. In that case, was it clear there was only one garnishment? There was only one. This is a case where there's a possibility of many garnishments or many charging orders. That's why he's... This is a really important point. If there's a hundred of them, it really cuts both ways. That's why this is so hard to me. On the one hand, if there are a hundred of them and each is final, we have an appeal for every one of them. On the other hand, what supports you is if there's a hundred of them over ten years, do we have to wait until the hundredth? I'm saying something that cuts in both directions, but... You can come to grips with his point that are you supposed to appeal every one of them? We have to. In this case, of all cases, we want every appeal of every garnishment? Your Honors, it's because these charging orders, in the form that they were approved by the district court, are life and death for this case. Because Mr. Winget needs the distributions from those LLCs to pay the personal taxes that he owes on the LLC income. I don't think that's wrong as a matter of law, because I looked at that, and the taxes cannot be taken. The taxes he keeps, and then the profits go. I don't think that's correct. He's got the 26 U.S.C. 674 sub A obligation to pay the taxes. Chase's position is that they've got the right to take everything that is in the trust. It's the trust property. There'd be a tax garnishment. Is that your point? There'd be a tax garnishment? Your client couldn't even send the taxes owed to the IRS? Correct. Because Chase would claim a first priority position in those distributions from the LLCs as a result of the charging orders. They're first in line before the federal government. They can be first in line before the federal government. That's their claim. We don't think that's true. Anyway, that's what makes real the possibility. But the charging orders make them primary. If the charging orders were upheld as granting Chase the priority with regard to each LLC, they have priority. They would supersede the IRS. Absolutely. You think not? The idea is, what are the distributions? What rough amount are they currently? They're in millions of dollars. $10 million of distribution? Five? Yes. Five was supposed to go to Mr. Wingate from the trust. Mr. Wingate would collect all of it. That was what was supposed to happen. One million at the same time was going to go to the IRS. Your point is that Chase could garnish both. By his choice, I gather. May I add to that? Many of those millions would go to the federal government. Some would go to him. I'm making the point. Your theory is that Chase could get all five million. Therefore, how does he pay taxes without anything? That's correct. It's not my theory. That's their theory. Doesn't the government always trump, in other words, the IRS? There's probably some legal vehicle by which IRS gets its dough, despite Chase. That's a question that gets right to the root of this appeal. That's why the district court and Chase are wrong. The tax obligation is a personal obligation of Mr. Wingate. Okay, I understand. We don't want to go there, for what it's worth. You can keep trying to push us there, but we're so interested in figuring out the finality. Try it. We'll keep pulling you back. It has to be final. I understand your concern. I guess I have a number of related issues. If it's so important, why can't you seek an interlocutory appeal? Why can't you seek a 54B? Why can't you seek mandamus if the district court won't participate in that? Then I still have this final question. I hate to even throw it in. As I understand the law, you should tell me and point me to why the government doesn't come first. The government always comes first. The government always comes first, but under Chase's view of the world, those assets in the trust, including the distributions... Let me just interrupt to say this is plausible. We had a case on Tuesday which made this exact point. There are tax garnishments. There is a tax garnishment concept, which means the garnisher gets it ahead of the garnishee, the government. Yes, and Chase's position, the reason I say this is because this is what the district court held. This is what we're up for on appeal. Said that those assets, those distributions, belong to the trust and the trustee, not to Mr. Winget, and therefore Chase has the ability to get those, notwithstanding the IRS. But why isn't Judge DePars... I laid out what seemed to me a very hard part of this case. Theoretically, you have 100 garnishments that could go. This is a lot of money here. This could take a long time. It would. So it's ten years. It seems weird to say you have to wait until the end. That supports your position. But it seems weird to say you have to appeal every one, otherwise you lose your right. So why isn't a 54 certification quite a nice solution to sort out what's a really important point? That's why you both want us to resolve this. Right. If we're talking about a certification or a mandamus, which, by the way, both parties didn't think was necessary because they thought this was a final word. That happens. That happens. But those still leave everything up to the discretion of an appellate court whether to take jurisdiction. So would anyone have both? You can only answer for your client. But we have this indicative ruling concept. There's an indicative ruling provision in the district court. There's one in the court of appeals. And what the court of appeals can do is kind of an opportunity to communicate at a time where the district court may think it doesn't have authority. So the district court probably thinks it does not have authority over this exact issue right now. That would be understandable. Couldn't we ask for an indicative ruling whether – is it Judge Cone? Is this Judge Cone's case? It is Judge Cone. Whether Judge Cone would certify under Rule 54. He says yes. Problem solved. We don't have to issue a jurisdictional ruling on what's a very complicated case. And then if he says no, all of a sudden taxes can't be paid in the meantime. No, wait, stop. If he says no, we then have to decide whether there's finality. But that way you avoid having to deal with a very hard issue potentially. And I don't know why he would say no. This seems like so central. Do you think he's enjoying this? I certainly hope not. We're not enjoying this. I would think he would be really thrilled to figure out the answer to this. We're not enjoying it. If you were going to ask for an indicative ruling, then I would respectfully ask that you also clarify in any such order that these charging orders are not enforceable until the appellate validity – I mean the validity of these on appeal has been determined because otherwise they're able to take all these monies. What's wrong with the district court's request that you post bond? I mean this happened with me when I was on the district court all the time, and bond was a common thing that was posted. Okay, it takes the risk out. You don't have risk, but they don't have risk. And then Judge Sutton's proposal seems perfectly reasonable. Why would that take more than a week? Why the indicative ruling approach take more than a week? Nothing in this case has taken a week. Everything in this case takes months and years. And when you've got circuit authority, Joseph Hughes, that says that a final order on a collection matter is something where you've got appellate jurisdiction, then I don't see why you walk away from that. You've got Judge Nalbandian's order in this very case that said until all the post-judgment proceedings are completed, there's no finality. Correct. And that, I don't think, contemplated future disputes on particular instruments of execution. Discussed future disputes. We have a final judgment on the guarantee. We have a final judgment in favor of Chase, and now we're in the collection phase. What is wrong? I'm still not following you. What's wrong with just, if you were so concerned that Chase is such a bad actor, why not post the bond? He was willing to give you a stay. It takes all the risk out, which is a perfectly fair request by a district court. And then let's get the 54B. And it could take a week. You're right. Who knows? It could take 10 years. But all I'm saying is that we could ask for it quickly. It could happen quickly. If it doesn't happen quickly, we move on. Yeah. It's all briefed. We've had the argument. So let me understand that. How are you hurt? I don't understand how you're hurt with the option of a very fast clarification that there's jurisdiction. If it doesn't happen quickly, do you really think we're going to sit on this? Will we have the opportunity to present our merits argument? Will you call us back to Cincinnati for an argument in a month if Judge Cohen says, yep, I'm done with that? You have jurisdiction because I think it's final. Maybe, maybe not. You're not entitled to anything more than anyone else. But, I mean, presumably, even if we didn't want to call you back, we could rule on the jurisdiction, if we have jurisdiction, that we could even set up a phone argument if we really needed argument. Briefing's pretty good on this, on the merits. There are a couple of small points that I would like to press. Okay, so what? In the 20 seconds I have remaining. Well, maybe we'll let you have some time, maybe even a little more than 20 seconds. But let me just, I want to get a few more details on the finality point. Yes, please. Am I right? There are 15 LLCs. Is that roughly? Roughly, yes. Okay. What is the pace of distributions? Like, I think right now the number that Chase wants to collect is a really big number. Huge number. And I'm just trying to figure out at the current distribution schedule, what are we talking about? Is that a couple-year thing? In other words, you lose everything. We do. Hypothetical question. You lose everything on the arguments you're making. How long does this play out? Five years, ten years, a hundred years? It could be potentially a long time. It depends on how long Mr. Winget would be able to use other assets to continue paying his taxes. So let's take the tax thing off the table. Yes. Okay? Let's assume there's a way to deal with that problem. I'm just trying to figure out how long we're talking about of garnishment charging orders. Well, the distributions are going to come once a year to pay taxes and possibly a little bit. Do the math. Just cut to the chase. What is the math? What is the amount of distribution? I think for his lifetime. How long is he? He's 74. Okay. And once he dies, that's that? Well, I think at that point, then all of a sudden things start to change because now the trustee has an obligation to try to distribute assets to beneficiaries. There's going to be sales. Chase is going to come in and they're going to claim that they're entitled to the sale proceeds. And we won't know whether that's true or not because the merits of this case will not have been resolved yet. But presumably the LOCs, if their garnishment orders are not incentivized to make greater distributions. They'll stop distributing. Oh, they can stop distributing. Until Mr. Winget dies and then there's a forced sale of the LLC. They can completely stop. Okay. Of course. The only reason they distribute money. Of course. Sorry. The only reason they distribute taxes. Do me a favor. Judge Sutton, I'm sorry. The only reason that they distribute is so that Mr. Winget can pay the taxes on the entities. Are all of the LOCs in Michigan? I don't know the answer to that question. So the reason that's important is it plays into the finality point. Wouldn't it be strange if we take the now Bandian opinion and say the post collateral is the whole distribution and yet some garnishments are outside the Sixth Circuit? That would by definition suggest it's a different action. I believe all the charging orders are here in Michigan. So they're all in the Sixth Circuit. Okay. So that's not a problem. To my knowledge. All right. Why don't you talk about the merits? Your friend is shaking his head affirmatively so we can go with that. Okay. So we're good on that. This is way off the course from the jurisdiction. But if you just indulge me for about two minutes. One minute to kind of give the 10,000 foot overview of why we're here and then a minute on legal points. At the time that Chase took the guarantee as well as the $150 million pledge that secured it, it also had more than $700 million in guarantees and pledges from 20 other companies that Mr. Winget owned. So in all, there was $850 million in collateral for a $400 million loan. When there was the default, Chase sold all those assets. Mr. Winget paid the $50 million so the pledge went away. Everything should have been over, but there was still a deficiency. And so now what Chase is asking you to do is to affirm a district court holding to give it what it did not get, which is an unlimited pledge from Mr. Winget from the stuff that he owns individually. So with that context, keeping in mind that these. I'm sorry. What do you mean by an unlimited pledge? It's a finite amount, so I'm not sure what you're saying. Well, the pledge has been discharged entirely. Chase's argument is that because the unlimited guarantee attaches to trust property and everything in the trust is trust property, that therefore they've got an unlimited access to Mr. Winget's personal property. It's as though he signed an unlimited pledge instead of a $150 million pledge. Well, help me with this simple thing which cuts against you. I thought the whole point of trust is to take it outside of the ownership of the individual. So what's funny about the case is he has his $50 million guarantee. He makes good on it, and the assumption usually with trust is the whole point is so you don't have to pay taxes. There's some other entity that controls it, and that's what seems to be the premise of their argument in the district court's decision, and that doesn't seem crazy to me. I thought that was the point of trust in these other legal entities. And it quarrels with your argument that now they're into all his personal money. Judge Sutton, Judge Cook, that's true of an irrevocable trust because there the owner has now lost control over the assets. In a revocable trust, at any time you can pull the string and the assets are yours again. And I thought this is revocable. Are there no limits on that? There are no limits on that. No, there's nothing. He can do one thing, the next day do the next. What MCL 556.128 says is that Mr. Winget is the absolute owner, statute's words, not mine, absolute owner of those assets, and the Court of Appeals in Michigan in 2018 in the In re Brach case that we cite at page 19 of our brief says that very thing. The settler remains the owner. And I thought about their kind of apocalyptic scenario, that if you would reach that holding, if you would agree with us, that somehow that upsets the financial world. And I thought, well, where's the situation where this would come up most often? And it would be where you have the settler of a revocable trust who wants to get a mortgage on their house, which is in the trust. Who owns that? And so I looked to Fannie Mae, which tells the entire industry this is what the documents have to say. Now you're talking about irrevocable. Now I'm talking about revocable. For a revocable trust that holds the property and they want a mortgage from a bank, what does Fannie Mae tell the lender to do? And this is E-2-06 of the Fannie Mae requirements. They've got a signature requirement. You get the signature individually and ask the trustee. And Chase knew how to do that because when it took the pledge, the security, it asked Mr. Winget to sign individually as well as in his capacity as trustee. What if I think this is the most irrevocable trust in the world for practical reasons? Explain the practical reasons that would make a revocable trust irrevocable. Because if he revokes it, he loses every dime. And how is that? Because then it's his property. Correct. Can't they then get it all? No, because Chase has no judgment against him. The judgment against Mr. Winget is discharging. Right, right. It's the opposite. It's supporting your point. Right, exactly, Your Honor. So the other, whatever it is, $700 million plus is all against the trust? Yes, because they have, as a result of this court's 2015 ruling, an unlimited guarantee. Why doesn't he revoke it then? He tried. And they accused him of doing a fraudulent transfer, which the district court sustained. And rather than appeal that, because we wanted to give you guys a break, we put everything back in the trust and fought about who owns those assets. Why not appeal that? Have you waived your right to appeal that? We have not, because it's interlocutory. The fraudulent transfer proceeding has been stayed. It's not final. And that's a cross-claim. It's not consolidated with the claims in our case. And so the non-finality of that portion of the case doesn't affect your jurisdiction in this case. So the bottom line is— It seems strange, though, to be doing garnishment rulings before that's resolved, doesn't it? Am I missing something? Well, that was Chase's approach. They asked the court— But you agreed to it. We agreed to it. Yes, because we didn't think it was fraudulent. But whether it was fraudulent is determined about— Why not finalize that? Isn't that important? I'm lost on why you wouldn't want a final ruling on that. Because if this court rules in this case that Mr. Winget owned the assets and that Chase knew that, that's why I got his personal signature on the pledge, which was their security. If you hold that, then everything else is gone. Then there was no fraudulent transfer because he owned the assets, as he thought he did at the time he revoked the trust. So this is the first question, in your view. It is the first question. And if you resolve it, we will never be back here again. They'll have an unsecured judgment. You have guarantees and personal guarantees. This is a personal guarantee. That's a bad one to make in this case. If they have an unsecured guarantee judgment against the trust and nothing against Mr. Winget, and you hold that Mr. Winget owns all that property, then there's nothing more to decide in this case. It is done. You can put a stake through it. All right, well, we had a chance to talk through a lot of stuff. We'll hear from the other side. You'll get your full rebuttal. Thank you. Good morning. Good morning. May it please the court. Jim Ducayet on behalf of Chase. Your Honor, I would very much like to get to the merits. But obviously- If you don't mind just starting with- Let me address- Because it's obviously troubling us. Yes. Let me address a couple of points that came up in the colloquy there. The first is there are a distinct set of LLCs that are the subject of these charging liens. Okay. The trust has membership interests in 15 LLCs. They're all Michigan LLCs. And by the way, they're all single-member LLCs. And why is that significant? Well, it's significant- The member? Who's the member? The member is- The membership interests are actually titled in the name of the trust. In the trust, okay. In the name of the trust. And that's significant for the merits point, which I'll get to momentarily. But the reality is from a tax perspective, Mr. Bursch made the example of, well, we may stand in front of the government. Well, those taxes can be paid from other assets. There's no particular reason why the distributions need to- But do you stand in front of the government? Would Chase have priority over the government for distributions that the government wants for taxes? Yeah, I think probably right. Well, let me put it this way, Your Honor, and I'll be getting a little bit over my skis because I'm not a tax lawyer. But I think the way it works with respect to LLCs is that the tax is on the distributions as opposed to on the income. I think that income gets passed through back to Mr. Winget. And so I think the point is, and Mr. Bursch said this, they're just never going to pay distributions. They're never going to make distributions. Now, it may be the case that there's an accumulation of retained earnings- Only distributions are taxed. I believe that's correct, Your Honor, yes. Not income. Okay. That's an important point. But don't- Yes. And so I get your practical answer, but usually LLCs, I thought, did pay on behalf of the distributees. I thought that was pretty classic. Well, Your Honor- So I thought it was just simple. I thought there were tax garnishments. Well, Your Honor- I thought you were allowed to garnish from the LLC as well as from the government. Am I wrong about that? Again, I don't want to represent myself as a tax lawyer here, but I think the issue is what the status of the corporation is. Is it a C-Corp at which it's taxed at the corporate level or is it an S-Corp at which- So I get that. My question assumed the answer to that. I was assuming an S-Corp. I get the point that the members, shareholders of the S-Corp are the ones that actually owe the tax obligation. But my understanding was the norm was for the LLC, even an S-Corp setting, to pay the government at that time to just make it easier. I mean the whole point was to make it easier. They didn't have to. They're not technically the ones obligated, but it was to make it easier. So I was assuming this was a complicated point that you could have a garnishment. Now, maybe Chase would take the position we're not going to garnish ahead of the government. We don't think that's a good play. Your Honor, I don't know what we would do. It's frankly not an issue that has come up in the case. But I mean- I'm reluctant to get too far ahead of this issue because- So your ultimate answer of how they pay is that's silly because they're just not going to distribute, so there's no pay obligation anyway. Yes, you've already said that. That's your real answer. If they know, okay. Now it may be- Garnished. It may be convenient for Mr. Wynja to draw income out through the form of distribution. It would be convenient in that he's getting into his later years, and how else will he draw income? Well- I know he has a lot of income. Yes, sir. But still, the idea in organizing his business interests, one would be start diminishing the value of these LLCs by virtue of distributions, right? And you say there's no taxing and taxes are only on distributions, so that's the point. He would perhaps expect to organize his world by distributing. Again, as I understand the law, Your Honor, at some point there may be sufficient retained earnings within the LLC that there would be a separate retained earnings tax. But that's a different- Yeah, that would make sense too. Right. How do you respond to Judge Lepar's point that the distributions are normally once a year? Have I got that right? The distributions are whenever they get made, right? Let's not dramatize it. Let's say it's once a year, and let's not even go beyond 10 years. So we'll just say 10 over 10 years. Judge Lepar's point is that if each one is its own action, if you don't appeal on distribution one, you're stuck. But the other side of that is now we wait until the end. It's all been distributed, and now the fight is about whether to get it all returned, which just seems like a super complicated problem. I can't figure that out. It's a super complicated problem, Your Honor, and I think what I would say is a couple of things. First of all, there is a discrete sort of unit of issues with respect to the LLCs. These are the only LLCs that are held in the trust. So just give us a pass on the first one, and we'll take care of most of the issues. That's your basic idea? Well, I think the point is when you're talking about a post-judgment execution, you know, the question is what's the right sort of judicial unit at which to assess the question of finality? And here what we're saying is that there is a discrete 15-LLC set of charges. Are we going to have to assess that in every case? I mean, you're burying us in the facts, which I understand why you're doing it. It makes perfect sense from an advocate standpoint. But I just look back at the prior opinion in this case where Judge Nalbandian said, and I can quote it or I can tell you, that a post-judgment order is not final until all the post-judgment proceedings are complete. And there's a logic to that. I agree with Judge Sutton. It creates this kind of – it's a really hard question. Isn't that dicta? No, that's what he based his ultimate opinion on. So it's necessary reasoning to the holding. But the question I have is the same one I asked the other side, which Judge Sutton came up with a good solution, it seems to me, is why not a 54, an interlocutory worst-case amendments? Why not try that? I know as a district judge it was a relief sometimes. In fact, we'd ask, and sometimes the Sixth Circuit would say, no, we don't think it's important enough. But district judges get how important this is, especially if he's going to be doing this over 10 years. He wants to get the first one right. And what's the objection to doing this through an indicative ruling? Do you understand the indicative ruling concept? I don't, Your Honor. So the basic idea is there's these amendments to the civil and appellate rules, which is meant to deal with this exact problem. The district court does not think it has authority over this. So I don't think Judge Cohen thinks tomorrow he could certify this issue under Rule 54 tomorrow. He would say, I don't have jurisdiction over it. It's been appealed. And what this allows is the court of appeals and the district court to communicate, so you can communicate back to the district court from the clerk's office saying, would you grant a Rule 54 certification if asked? He communicates back, yes, we sent it back for that limited purpose, get the certification, and this problem has gone away and we don't have to issue a ruling on it. And it should take very little time. It doesn't involve you all for what it's worth. You don't get to brief on it. It's just us communicating with the district court. I don't see the downside with that. Your Honor, I don't see the downside with it either except to make the following observation, that Mr. Wingett had the opportunity to file a mandamus or a 54B. He chose not to avail himself of that. And the other thing that's important is he – You said you want us to have jurisdiction. We do. Your Honor, I guess the point is that the parade of horribles that we've heard from Mr. Bursch I don't think sort of follow. He could have sought a stay of the enforcement of the LLC. He did not. Explaining why he's wrong about something you want. He and you want to know whether these charging orders stand up. Yes, that is exactly right. Everybody wants to know this. It just solves a lot or at least sheds light. So, yeah, your point. As a practical matter, yes. We want the same thing. We want a ruling from this court that makes clear that our obligation – So this vehicle, you have no objection to trying that? No. In which event, we still need to get to the merits? Yes, Your Honor. Okay. And I don't know whether we do that today. If I could, Your Honor, just take a few minutes. No, I don't have to bring you back, as Mr. Bursch has. So, Your Honor, just to say a few words about the merits. This is a case here where this court has held that the trust and Mr. Winget personally are separate and distinct obligors under this guarantee. And this court has also held that there is no limitation on recourse with respect to the trust. There is a limitation on recourse with respect to – In those prior rulings, I don't know them all, did we account for the revocable trust feature of this case? Your Honor, I think the court was certainly aware it was a revocable trust, but I don't think the fact that it's revocable – Wait, in the prior rulings? Because I thought under – so correct me if I'm wrong, but I thought Mr. Bursch was right, that under Michigan law, you can have a revocable trust, and then that law says that Mr. Winget owns the property. Well, Your Honor, here is the key point, though. Even under a revocable trust, there is authority granted to the trustee to take action with respect to the trust property. And so what happened here is that the – So I'm sorry to interrupt you. I apologize. But what happens is – so what he has a problem with, as I understand it, is he – it's a revocable trust. He takes things out. You all then force him to put it back just so you can take it. Well, Your Honor, the fact is he and his – and by the way, Mr. Winget is both the individual and he's the trustee here, so it's a little bit of an artificial concept. But the reality is he entered into a valid and binding obligation on behalf of the trustee. And what he's saying now is that the only interest, the only recourse that Chase has as to the trust is if we got a separate security interest, a pledge, or the mortgage that he was using as his example. His point is what right do you have now against him? The pledge is paid. Yep. And now what – there's a deficiency. Yes. Where's that writ, so to speak? Well, Your Honor, the fact that the pledges don't cover the full amount of the obligation – But the pledge was for a finite number. It was. But there's still a remaining obligation of $700 million under the guarantee that the trust is a party to. The fact that the – Okay, that's the vehicle by which you're claiming the right to the deficiency is by virtue of what? Say it again. Of the fact that there is a valid and binding contract guarantee. How did you oblige Mr. Winget to pay that? You had a some certain paid. Yes. Now, what vehicle, what instrument says, and you're required to pay any deficiency? We have a final judgment, final non-appealable judgment against the trust. A judgment against the trust. Which is not limited in any way by recourse. In essence, for me, just a simplified way of thinking about this is assume the trust has $700 million. You've got a judgment against it. You don't want it to convey the money to him to avoid you fulfilling the judgment. Yes, and the point about ownership here I think is a little bit of a straw man because what Mr. Winget has done is he's divided the world into sort of two. He says either Chase has a secured interest through a pledge agreement or he has no claim whatsoever. And the fact that the pledges don't cover the entire amount of the obligation doesn't mean we don't have a claim. It means we're undersecured. But then we are able to take all the remedies available to us as a judgment. Why wouldn't you want one panel to address this issue and the fraudulent conveyance? I mean, as I'm listening to this dialogue, I find myself thinking, hmm, it kind of begs the question as to what you can do. And it seems very puzzling to me. And it kind of goes back to suggesting lack of finality. I mean, a very good reason for not doing things piecemeal is you decide something just looking this way without appreciating what's behind you. So, Your Honor, there is a common legal issue that pervades the fraudulent conveyance ruling from the district court as well as this ruling. I think that is why we both are in agreement that we'd like the court to get the merits of this. But I'm actually thinking of something slightly different. Why isn't the indicative ruling request Rule 54 on this issue and the fraudulent conveyance decision? That seems to me what should happen. Your Honor, I can't disagree with that. Again, the primary objective I think we have is to get this issue... Start garnishing. You want to start garnishing. Your Honor, we want to collect on our obligation. We're out $700 million. This case has been going on for a decade. We want to be paid. And if the indicative ruling that you've suggested is a way to get to the merits of this legal issue, which we don't agree with, but we want the court... Don't you agree with Judge Sutton that it seems a little unfair not to decide the fraudulent conveyance as well? This is the importance of what Judge Nalvandian said, which is everything should be finished, and then we should figure it out. Well, the legal... Just to be clear on what happened with the fraudulent conveyance, the fraudulent conveyance action was brought... We got a judgment on the pleadings with respect to liability. That really is a separate action? It was a separate action. It was consolidated into the main action because the judge viewed this... The district court viewed this as essentially... It seems a little unfair to him if you assume it's not a fraudulent conveyance and then the money was properly not in the trust, and you can then take it before that's resolved. Well, Your Honor, I think, again, they had an ability... It's the same issue. It's the question of who actually owns this trust. Now, as we sit here today, they've put all the money back into the trust, and so we're pursuing our claim under our final non-appealable judgment against the trust, and so we're simply chasing the money. We have this fraudulent conveyance issue, frankly, as a practical matter. If we can collect against the trust, we don't have to go back against the... Inasmuch as the money's back, could you dismiss that? Could we dismiss the fraudulent conveyance claim? Right. The sin, yes, taking it. The remedy, returning it. Your Honor, I don't think so for the following reason. It may be the case that we cannot fully satisfy the obligations through the return of the money, at which point I think we would take the position that the fraudulent conveyance, which occurred back in 2015, 2014, excuse me, was an independent source of our harm, and we can go against Mr. Wynja personally for having essentially deprived us of the ability to recover against this. Am I right in thinking about this practically, that if you're right in the fraudulent conveyance, what ends up happening is it doesn't get conveyed, it stays in the trust, and then they have authority, if they want, not to distribute at all? That's right. As to the LLCs, now, again, this goes to the finality point, there are other assets in the trust. There are corporations, and there's a different procedure that happens with respect to corporations. Again, I know this is a clueless question, but if they don't have to distribute, part of the whole theory here is you can still go directly against the trust? We are going against the trust by virtue of the charging liens, I guess is the way to say it. But I guess the charging liens do you no good if they don't distribute, is my point. So I'm trying to figure out, the reason I thought it was a practical question is, explain to me if it's fraudulent conveyance, so it couldn't be transferred, it's in the trust, they say we're not distributing at all, and then garnishment's an abstract point, who cares, what happens next? Well, I think what happens next is we seek to execute against the remaining assets in the trust, which are the corporations. We have the charging liens to the extent that there are distributions. No, no, no, my premise is no distributions. Your Honor, that's up to Mr. Winget whether there are distributions or not. Okay, well then that means your client can't get anything until he dies, and then you have a new fight about that, am I right? That may be the case, Your Honor, and unfortunately that's the way in which we're, that's the way in which the charging lien statute works. But I mean, this seems so funny to me. I mean, we've gotten a suggestion there won't be distributions. Yep. So we're going to resolve all these issues to do nothing. Your Honor, I don't think you're doing nothing for the following reason. I think it is actually quite important for both sides to get a ruling on the legal question because if you resolve it in a particular way, it will have implications for the other assets that are being held in the trust against which we're seeking to execute. And it will have, you know, practical implications for Mr. Winget as well in terms of whether he can distribute and whether he has to pay Chase those distributions. Why does it affect other assets in the trust in as much as it is limited to the charging orders? And that's LLCs only. Those are just LLCs. There are corporations that are in the trust as well. Does the charging order say you can access something other than distributions from the LLCs? No. Right. So why are you telling us it's got broader? Because the legal question that's been presented here is who owns the property? Oh, so the big answer would be whose property is it? Is it him individually or the? You want an answer for the precedential effect it will have in other proceedings. That's exactly right, Judge LaFar. And the point we're simply making is we have the rights of a judgment creditor, the fact that you enter into a contract with authority. There's never been any claim here, by the way, that the trustee was acting out. I don't think Judge Cohn's right. So you've got what you need with him. From the case's perspective, it's really the other side that has the jeopardy. Your Honor, we can proceed. And again, there's no stay here, so we can proceed. We're moving to proceed with respect to the other assets. But they're not distributing right now. They're not distributing right now, but there are corporations, and we are proceeding with respect to the corporations. That's one more really silly question, which I'm sure there's an easy answer to, which is I'm just curious where you can get all this, as Judge Sutton points out, but there can be no remedy at the end. But it's a pain for him, too. Is there no middle ground? Is there no place you all can sit down and come to resolution so you can end this? Because we could be here 20 years from now if we're fortunate enough to be alive and sitting here. Your Honor, much as we enjoy being in front of this panel, we much prefer to get this issue resolved. And have you chatted? Have you gentlemen actually said, hey, why don't we stop it? It's expensive. It's ridiculous. Yes, you have. And it's just no way, Jose. Have you used our Paul Calico? We have not used Mr. Calico, but we have actually used the services of a mediator. We had a mediation with Judge Rhodes, former Chief of the Bankruptcy Court in Detroit. We had a number of sessions with Mr. Rhodes. We've tried, Your Honor. And look, I don't rule out anything in this case. And if we were able to come to a satisfactory accommodation, we won't bother you anymore. But unfortunately there are these overarching legal issues, which I think just make it very difficult. It's very much a binary issue. I'm not saying that in ten years, if you don't mind. It's an either-or proposition. When you're in future settlement, remember this. Wasn't the judgment, like, what, $400 million, $300 million? And it's now up to $715 million is what it's worth. So they have that. If you'd settled, you would have a lot of that, $300 million. Just tell your clients that. A lot of that would have been yours. Your Honor, by the same token, there's been almost double the principal amount through interest, and we're entitled to that too. I know. I'm making the point. Capture it. Capture it. Anyway, all right, well, thanks so much for listening to us and trying to answer our questions. We really appreciate it. All right, Mr. Burse, let's hear what you have to say. A couple of clarifications. First, the LLC profits are taxed, and that tax bill is in excess of $100 million per year. And I was wrong about distributions once a year. For normal people like us, that's when we pay taxes. But in that kind of situation, there's quarterly taxes. So the distributions are four times a year to satisfy that $100 million plus obligation. Sounds like you should settle too. We've tried. I wanted to make clear that there is an end to never. This can't go on forever because eventually those taxes will have to be paid, plus Chase even now is trying to get the district court to compel the sale of corporate assets. So if you were going to send a question back to the district court, the way I would frame it is, are the charging orders final and enforceable? Because if he says yes, then you've got jurisdiction to decide the merits. And if he says no, then they can't enforce the charging orders. Why would we go that route? We know how to do the Rule 54. All right. Thank you. I just want to make clear. What's your position on whether to bring up the fraudulent conveyance decision? That is their separate claim. It doesn't need to be part of this case. Explain to me why we wouldn't want to decide that at the same time. I'm not following that. Because that issue is resolved if you rule on the issue in this case. What if we rule against you in this but would rule for you on the fraudulent conveyance? I mean, you've got real jeopardy by not having them both ruled on. Right? Am I missing something? If you rule here that Mr. Wingett didn't actually own the assets, contrary to the statute and Ray Brody, then it was a fraudulent conveyance because those assets were subject to a judgment that Chase could potentially get. The litigation was ongoing. The district court, in its first ruling, had held it was Mr. Wingett's property. So you're not worried that you've looked at this and you're not worried that if we rule against you, we could also rule for you on the fraudulent conveyance? I don't think there's any whiplash. I think the question comes down, did he control it? One other point on jurisdiction. If there's no whiplash, why do you care? We don't. That's why we agreed to a stay of the fraudulent conveyance. So in other words, why do you care about our not doing both together? In other words, we should do both together. There's no whiplash problem. Let's get the fraudulent conveyance resolved at the same time we get the garnishing order resolved. Their claim under the fraudulent conveyance, and my friend on the other side started to explain this, would be that even if putting everything back in the trust was the right thing to do, that they could have been damaged by millions of dollars during the time when it was out of the trust and Mr. Wingett was taking distributions, and you could have a multiyear proceeding and a trial on that issue that nobody wants to go through if this court says the trust doesn't own the assets, the settler does, when you've got a revocable trust. The jeopardy actually rolls the other way. The jeopardy does roll the other way. And one other prejudice point that I want to bring up about not resolving this issue now, the judgment is $750 million. Getting a bond on $750 million is prejudicial. That's not a small matter. Very briefly on the merits, Judge Sutton, you asked whether the previous rulings accounted for the revocable trust. It acknowledges, as my friend says, that there was a revocable trust, but none of those rulings says who owned the trust assets. No one ever addressed with a revocable trust that the settler can yoke back at any time, in Ray Brody, does the settler still own the assets. That question has never been resolved. So then Judge Thapar, you started by saying Mr. Wingett owns the property. That's correct. But then you said assume the trust has $750 million. Well, even if the trust had $750 million sitting in it, that's still Mr. Wingett's property. So they don't get to collect on it. And they knew that, and that's why that. Okay, so explain this to me, and I'm sorry that I don't understand it, but if the trust has $750 million and they've got a judgment against the trust, the member of the trust, the owner of the trust can pull it out and their judgment's illusory against the trust without a personal pledge? It's not illusory because at the time that the trust signed the guarantee, there was the $150 million in collateral pledge. So it wasn't illusory. They had collateral, but that's gone now because the pledge has been satisfied. If Chase wanted what it's asking for now, it would have gotten a pledge for an unlimited amount. But when they asked Mr. Wingett for that, the record is clear on this, he said no. And if the settler makes clear to Chase, you don't have access to the money in the trust above $150 million. Chase can't then come back 15 years after the fact and ask for $750 million. Explain to me how it's fair that the bank gives you whatever. Let's just say $100 to make it easy. The bank gives you $100 and says you pledge to pay $50 and we'll secure the rest from the trust, which has the money. You pay your $50 and pull that out so they can't secure the other. That seems to me problematic. You see what I'm saying? Yes, I do. And if you just give me a little explanation time on this. The reason it's problematic is because no one thought that the guarantee was actually unlimited. The whole purpose of the reformation trial and what the district court found was that everyone intended that the pledge was only for $50 million. And this court, on a technicality which we can't challenge now, it's law of the case, said that in Michigan you can't reform a contract that's unambiguous and integrated. So notwithstanding the party's intent, now all of a sudden we have this fiction where we pretend that the trust had an unlimited guarantee and Mr. Winget had a $50 million guarantee. But where the rubber meets the road is this Fannie Mae Chase form, consistent with Michigan law and law across the country, which says if you want to be able to access everything that's in the trust, you need the settler's permission to do it. And they knew that. That's why they got the pledge and got him to sign it both capacities. Does the judgment make that not useful? The judgment that is already on the technicality? Does that obviate your argument here? Not one iota. Because the judgment is against the trust alone, and it's the unlimited guarantee. The question that we're asking you, that Chase is asking you to answer is, what assets does the trust own? And the trust only owns assets, well, it doesn't even own an assets net after the settler dies. The trust doesn't own this. Winget does. Right. A revocable trust. That's still the overarching question. A revocable trust is a contract instrument, and a contract instrument can't own anything. All right. So ends Chapter 55 of our 100-chapter book, and thank you, all of you, for excellent briefing, excellent argument. We really appreciate your answering our questions. We're always grateful for it. Thanks so much. The case will be submitted. The clerk may call the next case.